UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ROBYN FISHKIN,

                          Plaintiff,

          -against-

COUNTY OF NASSAU, and NASSAU
COUNTY OFFICE OF THE MEDICAL
EXAMINER,

                         Defendants.
---------------------------------------------------------X

Docket No.:     2:25-cv-6501

**COMPLAINT**

Plaintiff ROBYN FISHKIN, by and through her attorneys, the BELL LAW GROUP PLLC, respectfully alleges, upon knowledge as to herself and her own actions, and upon information and belief to all other matters, as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.     Plaintiff Robyn Fishkin was employed as a Forensic Scientist III by Defendants and lawfully participated in an investigation (the "Investigation") conducted by the Nassau County Inspector General ("NCIG") and the New York State Office of the Inspector General ("NYSIG") into alleged illegal activities by individuals working within and on behalf of the Nassau County Division of Forensic Services, also known as, Crime Lab (the "Crime Lab"). In retaliation for Plaintiff's participation in the official Investigation, the Defendants systemically destroyed Plaintiff's career and have subjected her to a campaign of harassment, intimidation, and retaliation, which culminated with the termination of her employment with the Defendants.

2.     As more fully set forth below, in retaliation for Plaintiff's participation in the Investigation the Defendants disciplined Plaintiff, stripped her of her job duties and subjected her

to verbal abuse and harassment, and terminated her employment. The Defendants' actions were particularly egregious in light of the Defendants' crucial role in the enforcement of County and State law. Sadly, Defendants and their decisionmakers believed themselves to be above the law and brandished the power of the State to ruthlessly retaliate against Plaintiff.

3.      Defendants' actions were in violation of New York Civil Service Law Section 75-b ("Section 75-b"), which prohibits whistleblower retaliation against public employees in the State of New York.  Defendants' actions were also in retaliation for the Plaintiff's exercise of her First Amendment rights to free speech and to petition the government for redress.

4.      As a direct and proximate result of Defendants' retaliation and termination of Plaintiff's employment, Plaintiff suffered a chilling effect on the exercise of her First Amendment rights, damage to her professional reputation, economic loss, and emotional distress.

5.      On August 22, 2023, Plaintiff filed a complaint in the Nassau County Supreme Court (the "Lawsuit") stating claims against the Defendants for violations of Section 75-based on their retaliation against her for participating in the Investigation. This action is currently pending.

6.      Appallingly, on April 24, 2024, Defendants wrongfully terminated Plaintiff's employment, alleging that she was being fired "by reason of a disability," which clearly reflects that she was being terminated, at least in part, on the basis of a perceived disability and for exercising her first amendment rights.

7.      As more fully set forth below, in retaliation for Plaintiff bringing a suit in State Court, participating in the Inspector General's investigation, for engaging in protected speech, and because of her perceived disability, the Defendants wrongfully terminated Plaintiff's employment.

**JURISDICTION AND VENUE**

2

8.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§1331 & 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendants.

9.     Venue is proper in this case pursuant to 28 U.S.C. §1391 because (1) the Defendants are located in Nassau County, New York, which is located in the Eastern District of New York, and (2) the events which give rise to Plaintiff's claims took place in Nassau County, which is located in the Eastern District of New York.

10.     Plaintiff filed an Equal Employment Opportunity Commission Charge on September 25, 2024. The Defendants submitted a position statement on January 20, 2025. Plaintiff then submitted a Response to Defendants' position statement on February 21, 2025. A Right to Sue letter was issued by the EEOC on August 25, 2025.

11.     On August 19, 2022, Plaintiff filed a timely Notice of Claim, so all conditions precedent for filing the New York State Human Rights Law have been met. See Notice of Claim annexed as Exhibit B.

**PARTIES**

12.     Plaintiff Robyn Fishkin was a resident and domiciliary of Suffolk County, New York at all relevant times to the Complaint. At all relevant times to the Complaint, Plaintiff was an "employee" of the Defendants.

13.     Defendant County of Nassau was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place of business is located at 60 Charles Lindbergh Boulevard, Uniondale, New York 11553. At all times relevant herein, Defendant County of Nassau was Plaintiff's employer.

3

14.     Defendant Nassau County Office of the Medical Examiner was and still is a municipal corporation incorporated under and by virtue of the laws of the State of New York. Its principal place is located at 2251 Hempstead Turnpike, Building R, East Meadow, New York 11554. At all times relevant herein, Defendant Nassau County Office of the Medical Examiner was Plaintiff's employer.

## **FACTUAL BACKGROUND**

*Plaintiff's Employment with the Defendants*

15.     Plaintiff was employed by the Defendants as a Forensic Scientist III in the Latent Print Section of the Office of the Medical Examiner.

16.     Plaintiff was employed with the Defendants from November 2012 through her wrongful termination on April 24, 2024.

*Investigation*

17.     In September 2021, Plaintiff began cooperating with the Nassau County Inspector General to investigate potential illegal activities of the Nassau County Crime Lab.

18.     During the course of that investigation, the NCIG asked Plaintiff if she had any relevant information which could be useful for the investigation, and indicated to Plaintiff that her participation in the investigation, including the provision of information was permissible.

19.     After receiving these assurances, Plaintiff participated in the NCIG investigation and provided information to the NCIG.

20.     At some point, thereafter the investigation was taken over from the NCIG by the New York State Inspector General ("NYSIG") with whom Plaintiff then began to cooperate.

21.     The NCIG and NYSIG are governmental bodies as defined by Section 75-b of the New York Civil Service Law.

22.     The Division of Forensic Services aka the Crime Lab is owned and operated by the Defendants.

23.     Plaintiff's cooperation with the Investigation included multiple discussions with the NCIG and NYSIG regarding her knowledge of potential illegal activity at the Crime Lab, including in-person interviews with the NYSIG.

24.     In furtherance of her cooperation with the NCIG and NYSIG, Plaintiff provided information about what she believed to be illegal and unethical activities on the part of the Crime Lab, including, but not limited to, the misuse of government funds and improper, unlawful, and inaccurate revisions of scientific findings to fit the political agendas of the Defendants. In particular, there was a cover-up of an error from a 2005 sexual assault case where the suspect was later convicted of a 2006 high-profile homicide.

25.     Plaintiff cooperated with the NCIG and NYSIG in good faith.

26.     Plaintiff provided information to the NCIG and NSYIG about specific cases in which she believed the Crime Lab had engaged in illegal and unethical activities.

27.     Plaintiff was provided with assurances by the NCIG and NYSIG that her disclosure of information was protected, lawful, and proper.

28.     Based on these assurances from the NCIG and NYSIG, Plaintiff continued to cooperate in the Investigation.

29.     The NCIG and NYSIG requested information from the Defendants relevant to the investigation.

30.     The Defendants were aware of the Investigation as early as November 2021.

31.     The Defendants were aware that Plaintiff was participating in the Investigation as early as November 2021.

32.     On November 29, 2021, Karen Dooling notified all laboratory staff via email that management would be investigating a breach in data security and the unauthorized dissemination of case information.

33.     In addition to Ms. Dooling's email, an email was also sent by Sandra McNulty regarding improper CODIS/DNA disclosure and penalties to intimidate Plaintiff because of her participation in the investigation.

*Retaliatory Discipline Against Plaintiff*

34.     Defendants' retaliation against Plaintiff, for her protected whistleblower activities, commenced on or about March 25, 2022, when her promotion to Forensic Scientist III was improperly delayed.

35.      Plaintiff filed a grievance with Defendant County of Nassau in order to obtain her promotion.

36.     As a result of the grievance, Plaintiff was awarded the promotion and $103. Still, the effective date was not backdated to the date she should have been promoted.

37.     On May 25, 2022, Plaintiff was issued a formal discipline by the Defendants.

38.     Plaintiff was issued this discipline at a formal meeting attended by the entire leadership team of the Medical Examiner's Office.

39.     The discipline stated that Plaintiff had engaged in unspecified "improper data access".

40.     The discipline did not provide Plaintiff with any specifics pertaining to the alleged improper data access.

6

41.     The discipline provided that Plaintiff could be subjected to termination for any additional improper data access, still undefined.

42.     Plaintiff is aware that another employee of the Defendants who cooperated with the NCIG and NYSIG was issued the same discipline on the same date. Accordingly, the discipline was clearly related to and in retaliation for Plaintiff's lawful participation in the Investigation.

43.     The Defendants issued Plaintiff the discipline to intimidate and discourage her from continuing her cooperation with the NYSIG.

44.     The discipline was issued to Plaintiff notwithstanding the protected nature of her disclosures to the NCIG and NYSIG.

45.     The Defendants' decision to discipline Plaintiff in retaliation for her participation in the Investigation has caused Plaintiff severe emotional distress and anxiety.

46.     In or around May 2022, Plaintiff became aware that Defendants, by and through Dr. Buffolino, laboratory director, made a report to the District Attorney for the Homicide Bureau of Nassau County regarding Plaintiff, which contained inaccurate information and called her integrity into question, and improperly accused her of malfeasance.

47.     As a result of Plaintiff's disclosures and participation in protected whistleblowing activity, she was subjected to increased scrutiny of her work and ostracization in the workplace.

48.     As of May 15, 2023, without merit, in further retaliation for her participation in the Investigation, Ms. Fishkin was demoted from her position as a Forensic Scientist III in the Latent Prints section, where she worked as the most senior analyst assigned to casework, and was removed from all duties. Plaintiff continually asked for work but those requests were ignored.

49.     On September 7, 2023, Defendants issued a further Notice of Personnel Action against Plaintiff, alleging that on September 8 and September 9, 2022, nearly one year prior to the

7

issuance of the Notice, Plaintiff engaged in insubordination and disrespecting coworkers/supervisor when she was allegedly "rude and disrespectful" to Chris Bernier.

50. Defendants sanctioned office events and parties and deliberately excluded Plaintiff from participating in retaliation for her disclosures. Additionally, Plaintiff was deprived of the privileges to access a private room for conversations with her lawyer, union representative, or inspector general.

51. Deviating from their own policies on Quality Reporting concerns, Crime Laboratory management further retaliated against Plaintiff by intimidating and harassing her, and unjustly reported her to be investigated for voicing legitimate laboratory quality concerns. As a result, she was required to sit for an investigatory interview on March 20, 2023.

52. On May 11, 2023 while Plaintiff took the day off from work, the Crime Laboratory Management further harassed and intimidated Plaintiff by unnecessarily dispatching two anonymous Nassau County investigators to her private residence outside of Nassau County, trespassed on her private property where they proceeded to tape an unmarked/unsealed envelope with a letter inside of it to her interior door while using aggressive posturing and profane language.

53. Plaintiff was additionally intimidated by the laboratory management and threatened with termination with no legitimate reason in a letter dated May 11, 2023, from acting Crime Lab director Buffolino, Dr. Bloom, and Keith Cromwell.

54. In addition to these retaliatory acts, the laboratory condoned, approved of, and promoted the ostracism and poor treatment of Plaintiff.

55. On February 23, 2023, Plaintiff's supervisor Christopher Bernier proclaimed it to be "Good" in response to a coworker who relayed an anecdote to him that Plaintiff could have possibly been killed while on lunch that day due to being served shrimp while possessing a life-

threatening allergy. This disgusting comment is an indication of the disdain the Defendants had towards Plaintiff.

*Further Retaliation Following Filing of Summons and Complaint*

56.     On or about August 22, 2023, Plaintiff, by and through her undersigned counsel, filed a Summons and Verified Complaint in Nassau Supreme Court alleging whistleblower retaliation against the County of Nassau and the Nassau County Office of the Medical Examiner.

57.     On or about August 24, 2023, the Summons and Complaint were served upon the County of Nassau and the Nassau County Office of the Medical Examiner. The Summons and Complaint detailed the above-referenced protected disclosures and incidents of retaliation by the County of Nassau and the Nassau County Office of the Medical Examiner as against Plaintiff.

58.     This Notice of Personnel Action was issued within two weeks after the County learned of the Lawsuit and is itself a further retaliatory personnel action by the County in direct violation of Section 75b.

59.     The Defendants' issuance of the September 7, 2023, Notice of Personnel Action to Ms. Fishkin was in further retaliation for both her cooperation with the NCIG and NYIG, as well as her filing of the Lawsuit, in violation of her First Amendment Rights.

*Discrimination Based on Perceived Disability*

60.     On April 24, 2024, Defendants served Plaintiff with a Notice of Personnel Action alleging that on April 28, 2023, nearly a full year prior, she "refused to bring recordings to the NCDAO that contained potential discovery materials."

61.     Plaintiff previously turned over all recordings to NCDAO.

9

62.    Defendants also provided Plaintiff with an attempted referral for a medical examination pursuant to Section 72 of the Civil Service Law.

63.    Despite the requested medical examination, the April 24, 2024, Notice of Personnel Action also terminated Plaintiff's employment. Therefore, after April 25, 2024, she would not be eligible for the medical examination.

64.    Additionally, in or around September/October 2024, Defendants demanded and received Plaintiff's mental health records from her practitioner despite her no longer being an employee of Defendants.

65.    The notice terminating her employment specifically states that the Defendants were "of the judgment" that Plaintiff was unable to do her job "by reason of disability." Therefore, Defendants clearly terminated Plaintiff's employment, at least in part, because of a perceived disability.

### FIRST CAUSE OF ACTION
***(Disability Discrimination in Violation of the Americans with Disabilities Act, codified as 42 U.S.C. §12112)***

66.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

67.    Pursuant to the Americans with Disabilities Act, codified as 42 U.S.C. §12112 it is unlawful for an employer, because of an individual's disability or perceived disability, to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

68.    Plaintiff was an employee within the meaning of the ADA 42 U.S.C. §12112.

69.    Defendants are employers within the meaning of the ADA 42 U.S.C. §12112.

10

70.    Defendants perceived Plaintiff to have a disability.

71.    Defendants engaged in an unlawful discriminatory practice by terminating Plaintiff's employment, at least in part, because of a perceived disability.

72.    Defendants' actions were wanton and in willful disregard of Plaintiff's rights under the law.

73.    As a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under the law.

## SECOND CAUSE OF ACTION
### *(Disability Discrimination in Violation of the New York State Human Rights Law)*

74.    Plaintiff hereby repeats and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth and contained herein.

75.    Pursuant to NYSHRL, N.Y. Exec Law § 296, it is unlawful for an employer because of an individual's disability or perceived disability to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment."

76.    Plaintiff was an employee within the meaning of New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292(6).

77.    Defendants were employers within the meaning of NYSHRL, N.Y. Exec. Law § 292(5).

78.    Defendants perceived Plaintiff to have a disability.

79.    Defendants discriminated against Plaintiff and deprived her of her rights under the NYSHRL by subjecting her to discrimination in her terms, conditions, or privileges of employment

11

when, inter alia, they terminated Plaintiff's employment, at least in part, due to their perception that she had a disability.

80.     Defendants' actions were wanton and in willful disregard of Plaintiff's rights under the law.

81.     As a result of Defendants' unlawful conduct, Plaintiff has been damaged as set forth herein and is entitled to the maximum compensation available under the law.

**THIRD CAUSE OF ACTION**
*Violation of the First Amendment to the United States Constitution Freedom of Speech*

82.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as set forth fully herein.

83.     At all relevant times, Plaintiff was a public employee of Defendants.

84.     Through her participation in the NCIG and NYSIG's investigations into illegal activities by individuals working within the Crime Lab, Plaintiff raised concerns about potential illegal activity.

85.     The illegal activity at the Crime Lab is a matter of public concern.

86.     In making the above-referenced disclosures to the NCIG and NYSIG, Plaintiff was acting in her capacity as a member of the public and a citizen of the United States of America.

87.     Plaintiff's statements to the NYSIG were through channels of discourse that are available to non-employee citizens.

88.     Plaintiff's participation in the investigations was an expression of her Free Speech activities.

89.     As a result of her Free Speech activities via the investigation, Plaintiff was improperly disciplined, stripped of her job duties, subjected to verbal abuse and harassment, and terminated.

90.    By imposing improper discipline, stripping Plaintiff of her job duties, subjecting her to verbal abuse and harassment, and termination, Defendants treated Plaintiff differently than they would treat a member of the general public under the circumstances.

91.    As a direct and proximate result of Defendants' retaliation and termination, Plaintiff has suffered a chilling effect on the exercise of her First Amendment right to free speech, damage to her professional reputation, economic loss, and emotional distress.

92.    By retaliating against Plaintiff, Defendants have chilled the exercise of free speech by persons with knowledge of the illegal activity in the Crime Lab.

93.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**FOURTH CAUSE OF ACTION**
*Violation of the First Amendment to the United States Constitution Right to Petition the Government*

94.    Plaintiff repeats and reiterates the allegations set forth in the preceding paragraphs as set forth fully herein.

95.    At all times described here in Plaintiff was, and remains, possessed of a clearly established right to petition the government for the redress of grievances, as is explicitly afforded protection under the First Amendment.

96.    At all times described herein, the right to petition government for the redress of grievances encompasses Plaintiff's clearly established rights to avail herself of the New York State Court System by commencing and filing an action in New York State Supreme Court.

97.    Plaintiff's filing of the Summons and Complaint on August 22, 2023, was an exercise of her First Amendment right to petition the government.

13

98.    By imposing improper discipline, stripping Plaintiff of her job duties, subjecting her to verbal abuse and harassment, and termination, Defendants violated Plaintiff's First Amendment right to petition the government for redress of grievances.

99.    As a direct and proximate result of  Defendants' retaliation and termination, Plaintiff has suffered a chilling effect on the exercise of her First Amendment right to free speech, damage to her professional reputation, economic loss, and emotional distress.

100.    By retaliating against Plaintiff, Defendants have chilled the exercise of free speech by persons with knowledge of the illegal activity in the Crime Lab.

101.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**WHEREFORE,** Plaintiff prays that this court grant her judgment containing the following relief:

a.  Impanel a jury to hear Plaintiff's claims;

b.  On the First Cause of Action, an award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, pension benefits, health benefits and other employment benefits and damages on account of emotional injury and distress;

c.  On the Second Cause of Action, an award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, pension benefits, health benefits and other employment benefits and damages on account of emotional injury and distress

14

d. On the Third Cause of Action, an award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, pension benefits, health benefits and other employment benefits and damages on account of emotional injury and distress;

e. On the Fourth Cause of Action, an award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, pension benefits, health benefits and other employment benefits and damages on account of emotional injury and distress'

f. An award of reasonable attorneys' fees and costs related to Plaintiff's claims; and

g. Such other and further relief as this Court may deem just and proper.

Dated: Syosset, New York
      November __21__, 2025

*Paul A. Bartels*

_____
BELL LAW GROUP, PLLC
Paul Bartels, Esq.
116 Jackson Avenue
Syosset, NY 11791
Ph: 516.280.3008
paul@belllg.com
*Attorneys for Plaintiff*

## VERIFICATION

STATE OF NEW YORK     )
                      )     ss:
COUNTY OF  NASSAU     )

ROBYN FISHKIN, being duly sworn, deposes and says that I am the Claimant in this action, that I have read the foregoing Notice of Claim and know the contents thereof, and the same is true to my knowledge, information and belief.

_Robyn Fishkin_
ROBYN FISHKIN

Sworn to me this 18th
day of July 2024

_____
NOTARY PUBLIC

HELAINA MARIE CHIOFOLO
Notary Public - State of New York
NO. 01CH0006953
Qualified in Nassau County
My Commission Expires May 4, 2027